IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KURYAKYN HOLDINGS, INC.,                              OPINION AND
                                                      ORDER
                    Plaintiff,
                                                      09-cv-702-bbc
          v.

JUST IN TIME DISTRIBUTION CO.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil suit for monetary and declaratory relief, plaintiff Kuryakyn Holdings, Inc. contends that defendant Just In Time Distribution Co. has breached a contract between the parties, has been unjustly enriched by retaining royalty overpayments belonging to plaintiff and is not entitled to royalty payments on sales of plaintiff's current designs and products. Both parties have filed lawsuits against each other: plaintiff filed this case on November 18, 2009; defendant filed its own case in the District Court for the Southern District of California on December 11, 2009. Now before the court is defendant's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(3) for improper venue. Jurisdiction is present under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are completely diverse.

1

Although defendant has moved to dismiss this case under Rule 12(b)(3) for improper venue, it does not argue that venue is improper under considerations relevant to the federal venue statute, 28 U.S.C. § 1391.  Instead, the grounds for defendant's motion is based on case law providing that improper anticipatory actions may be dismissed in favor of duplicative actions filed later.  Defendant contends that this case should be dismissed in preference to the California proceeding.  I conclude that dismissal of this case would not further judicial economy.  Therefore, I will deny defendant's motion to dismiss.

Because this is a motion to dismiss under Rule 12(b)(3), I may consider venue-related facts alleged outside the pleadings without converting it to a motion for summary judgment. Contintental Casualty Co. v. American National Insurance Co., 417 F.3d 727, 733 (7th Cir. 2005).  Thus, I draw the facts relevant to plaintiff's claims from the complaint and the facts related to the pending California action from the materials submitted by the parties in connection with the motion to dismiss.  Any conflicts concerning the facts are decided in plaintiff's favor.  Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003).

FACTS

A.  Allegations of Fact in Plaintiff's Complaint

Plaintiff Kuryakyn Holdings, Inc. is a Wisconsin corporation with its principal place

2

of business in Somerset, Wisconsin. Plaintiff sells after-market products and accessories for motorcycles, including custom light emitting diode accessories, chrome and billet accessories and cruise boards for engine guards. Defendant Just In Time Corporation is a California company with its principal place of business in El Cajon, California.

On November 15, 1998, the parties entered into a contract regarding the design and development of motorcycle accessory products. On December 12, 1998, they entered into an amended contract. Under the amended contract, defendant promised to develop motorcycle accessory products for plaintiff and to assign all design, patent and trademark rights resulting from such development to plaintiff. Plaintiff promised to pay defendant for each design used and sold in plaintiff's products. If plaintiff's products do not use defendant's design, no royalty payment is due to defendant. The parties' agreement also requires defendant to confer rights of first refusal to plaintiff for any motorcycle accessory design that is conceived and developed independently by defendant. The amended agreement may be revoked in its entirety if it is breached by defendant.

Sometime after the agreement was signed, defendant sold designs and related products to third parties without offering plaintiff a right of first refusal on these designs and products, including the Electra-Glo Light Pod Expansion that defendant sold to Harley-Davidson.

Many of the designs and products developed by defendant for plaintiff were of poor

3

quality and defective.  This led to high customer complaint and product return rates.  The poor quality of defendant's designs and products damaged plaintiff's reputation.  In 2005, plaintiff decided to develop its own designs and accessories independently of defendant.  Plaintiff created a new design for custom light emitting diode accessories.  During the redesign process, plaintiff acquired new circuit designs, schematics, printed circuit boards, light emitting diodes and circuit board assemblies for its products.  Plaintiff phased out its use of defendant's designs, schematics, printed circuit boards and circuit board assemblies in most of the end products and accessories plaintiff currently markets and sells.  During the period when plaintiff was making the transition from defendant's designs and products to its own, plaintiff overpaid defendant in the amount of more than $300,000 in royalties unrelated to defendant's designs or products.  Plaintiff paid royalties to defendant until November 2009.

On approximately September 11, 2009, the owner of defendant, David Abbe, sent an email to a representative of plaintiff, demanding royalty payments from several of plaintiff's products.  The majority of the products and accessories referenced in Abbe's email never involved defendant's designs.  The products were actually the result of the redesign project.  The remainder of the products and accessories identified in the email had been changed substantially and no longer use defendant's designs or products.

4

B.  Additional Facts Related to Defendant's California Case

On October 23, 2009, Abbe emailed plaintiff, reiterating his demand that plaintiff pay royalties for the products listed in his earlier email.  Abbe stated that "this shortfall is causing some significant distress in our situation and must be resolved quickly."  The email was also sent to "Dan Attorney Grindle."  On November 10, 2009, Abbe had not received a response from plaintiff.  He telephoned plaintiff and left a voice mail message, saying that plaintiff needed to resolve the matter or Abbe would have to "take the matter to another level."  Plaintiff did not tell defendant at this time that defendant's products were defective or that its designs had been replaced.  On November 18, 2009, plaintiff filed this lawsuit.  On December 11, 2009, defendant filed a lawsuit against plaintiff in the District for Southern California.  In his complaint, Abbe claims entitlement to unpaid royalties in excess of $600,000.

OPINION

Although "[n]o mechanical rule governs the handling of overlapping cases," Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor, Inc., 203 F.3d 442, 444 (7th Cir. 2000), there is a presumption against having duplicative actions pending simultaneously in different courts.  Serlin v. Arthus Anderson & Co., 3 F.3d 221, 223 (7th Cir. 1993).  "District courts are accorded a great deal of latitude and discretion in

5

determining whether one action is duplicative of another, but generally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." Id. (internal quotations omitted)   If the actions are duplicative, there is a rebuttable presumption that the first case filed should be allowed to proceed and the second case abated. Asset Allocation & Management Co. v. Western Employers Insurance Co., 892 F.2d 566, 573 (7th Cir. 1989); see also Warshawsky & Co. v. Arcata National Corp., 552 F.2d 1257, 1263 (7th Cir. 1977).  However, the Court of Appeals for the Seventh Circuit does not apply the "first-to file" rule rigidly, and has held that the presumption in favor of the first-filed case is overcome if the first case is a declaratory judgment action filed under threat of an imminent suit for the purpose of avoiding litigation in another forum.  Trippe Manufacturing Co. v. American Power Conservation Corp., 46 F.3d 624, 629 (7th Cir. 1995); Tempco Electric Heater Corp. v. Omega Engineering Inc., 819 F.2d 746, 750 (7th Cir. 1987); see also Ginmar Corporate Promotions, Inc. v. Cardinal Health, Inc., 2008 WL 4905994, *1-2 (N.D. Ill. Nov. 12, 2008) (declining to apply first-to-file rule where defendant filed declaratory judgment action in face of clear threat that plaintiff would sue). Although a court may properly exercise jurisdiction under 28 U.S.C. §§ 2201-2201 over a declaratory judgment action, a suit for declaratory judgment should not be used as a tool "aimed solely as wresting the choice of forum from the 'natural plaintiff.'"  Hyatt International Corp. v. Coco, 302 F.3d 707, 718 (7th Cir. 2002).  Thus, a declaratory

judgment action that is brought in the face of clear threats of suit and seeking a determination that no liability exists should be closely scrutinized as a potentially improper anticipatory filing if the other party proceeds to file. Tempco, 819 F.2d at 750.

Defendant contends that this action is duplicative of its California action and the presumption in favor of plaintiff's first-filed case is overcome because plaintiff's complaint is an anticipatory filing made in bad faith during the pendency of active negotiations and solely for the purpose of trumping defendant's California action.  It adds that the evidence strongly supports a conclusion that plaintiff's action is an anticipatory filing because defendant's communications with plaintiff in September, October and November 2009 demanding payment of royalties made it clear that defendant was prepared to file suit to enforce its claims.  Also, defendant contends, plaintiff acted in bad faith by inducing defendant to defer filing its lawsuit.  In particular, plaintiff asked Abbe about the particulars of his claims for royalties, implying that it would investigate those claims and failing to tell defendant at that time that its products were defective or that its designs had been replaced. Defendant alleges that this caused it to believe that the parties could negotiate their disputes without litigation.  However, instead of negotiating, plaintiff filed this suit.  Finally, defendant contends that it is the "natural plaintiff" in this case, because defendant is seeking payment of royalties and plaintiff is resisting defendant's claim.  The "natural plaintiff" in a case is "the one who wishes to present a grievance for resolution by a court."  Hyatt Corp.,

7

302 F.3d at 718.

Plaintiff denies that its declaratory judgment claim is an anticipatory filing, responding that defendant had not made a clear threat that it would file suit. According to plaintiff, defendant's emails and voice mail were vague and did not necessarily mean defendant intended to sue plaintiff. Further, plaintiff argues that it did not intentionally discourage defendant from filing suit by pretending to engage in negotiations. Instead, plaintiff alleges that it filed suit after it realized that it had overpaid defendant. At any rate, plaintiff argues, whether or not plaintiff's declaratory judgment claim is anticipatory is not dispositive of defendant's motion to dismiss. I agree.

Even if I agreed with defendant that plaintiff's declaratory judgment claim qualifies as an improper anticipatory filing along the same lines as Tempco, 819 F.2d 746 or Ginmar, 2008 WL 4905994, the present case is distinguishable for an obvious reason: the cases cited by defendant are premised on the principle that a party should not be allowed to engage in forum shopping by filing a complaint seeking *declaratory relief exclusively*, thereby usurping the choice of forum of the natural plaintiff. In this case, however, plaintiff has asserted four additional claims for damages that are separate from the declaratory judgment claim regarding plaintiff's right to cease any future royalty payments to defendant. Defendant asks the court to disregard plaintiff's breach of contract and unjust enrichment claims for the purpose of determining whether plaintiff's complaint should be dismissed, because, as

8

defendant contends, these claims are "utterly implausible" under <u>Ashcroft v. Iqbal</u>, 129 S.

Ct. 1937, 1949-50 (2009), and <u>Bell Atlantic v. Twombly</u>, 550 U.S. 554, 557 (2007).

Defendant asserts that

> The claim that [plaintiff] inadvertently overpaid Abbe under the circumstances
> alleged is astonishingly and brazenly implausible on its face.  If Abbe's designs were
> of such poor quality and defective, [plaintiff] would have had to expend considerable
> sums to replace them with newly-designed products. . . . It is inconceivable [that
> plaintiff] would expend the sums necessary to replace [defendant's] designs and
> implement production of those replacements, yet somehow inadvertently overlook—
> for at least four years—the fact that [plaintiff] had been overpaying Abbe substantial
> royalties on the sale of products not employing [defendant's] designs.  The claim is
> particularly suspect since [plaintiff] never complained to Abbe and never informed
> Abbe (for four years) [that plaintiff] had decided to replace Abbe's designs.

Def.'s Br., dkt. #8 at 9.  Defendant argues that because plaintiff's claims are implausible,

they should not be considered for the purpose of determining the applicability of the first-to-

file rule and whether plaintiff's complaint should be dismissed as an improper anticipatory

action.

Defendant's plausibility argument reflects a misunderstanding of the pleading

principles set out in <u>Twombly</u> and <u>Iqbal</u>.  These cases establish two new principles of

pleading in all cases:  (1) "fair notice" alone will not suffice; a complaint must be "plausible"

as well; and (2) a court may not accept "conclusory" allegations as true.  <u>Brooks v. Ross</u>, 578

F.3d 574, 580-81 (7th Cir. 2009) (under <u>Iqbal</u>, complaints "must provide notice," cannot

be "implausible" and cannot rely on "abstract recitations of the elements of a cause of action

or conclusory legal statements").  The Court made it clear that plausibility is "not akin to a 'probability requirement.'"  Iqbal, 129 S. Ct. at 1949.  The requirement of "plausibility" in a complaint does not mean a court should assess the likelihood that a plaintiff will be able to prove a particular allegation.  The Court rejected this view both in Twombly and Iqbal. Iqbal, 129 S. Ct. at 1951 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical."); Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.")  District courts must still accept all *non-conclusory* facts as true, no matter how unlikely they may seem.

A claim is not considered implausible under Iqbal and Twombly simply because the allegations are "fanciful," Iqbal, 129 S. Ct. at 1951, or as defendant contends, "because it defies reason or rests on assertions contrary to the received wisdom of common experience." A claim is implausible when it is not supported by factual allegations that address the elements of the claim.  Riley v. Vilsack, 665 F. Supp. 2d 994, 1004 (W.D. Wis. 2009). Plaintiff contends that defendant breached its contract and was unjustly enriched by selling specific designs and products to third parties without offering the right of first refusal to plaintiff and by retaining overpayments of royalties that rightfully belong to plaintiff.  Even if defendant is correct that plaintiff's allegations are *unlikely* or that it is *illogical* to think that plaintiff would redesign products without ceasing royalty payments to defendant, plaintiff's

10

claims are not *implausible* under Iqbal and Twombly because they (1) are specific and (2) address the critical elements of the claims.  Therefore, I will not disregard plaintiff's claims for breach of contract, unjust enrichment and contract rescission in determining whether to dismiss this case.

Because these additional claims and the relief available under these claims are not identical to the claims pending in the California action, the two actions are not duplicative. Serlin, 3 F.3d at 223.  Under the rationale in Central States, 203 F3d at 445, Serlin, 3 F.3d at 223 and Asset Allocation, 892 F.2d at 573, district courts have the discretion to dismiss *duplicative* litigation "in order to facilitate the economical management of complex litigation." Asset Allocation, 892 F.2d at 573.  Because the actions are not duplicative,  I will not use my discretionary power to dismiss this case.  Also, defendant has not argued that it would be appropriate to dismiss only plaintiff's declaratory judgment claim in this setting, probably because defendant realizes that dismissing only one claim would be unlikely to promote judicial efficiency.  If defendant is concerned about conflicting rulings or the trouble and expense of litigating in two separate forums, it can move the court in California for a transfer of its case to this court, where the cases could be consolidated and the claims tried in one suit.

11

ORDER

IT IS ORDERED that defendant Just In Time Distribution Company's motion to dismiss under Fed. R. Civ. P. 12(b)(3), dkt. #7, is DENIED.

Entered this 10th day of March, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

12