IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KURYAKYN HOLDINGS, INCORPORATED,

                Plaintiff,

  v.

JUST IN TIME DISTRIBUTION COMPANY,          OPINION AND ORDER
DAVID C. ABBE,

                Defendants,                            09-cv-702-wmc

DAVID C. ABBE,

                Counterclaimant,

  v.

KURYAKYN HOLDINGS, INCORPORATED,
MOTORSPORT AFTERMARKET GROUP, INC.,
TOM RUDD, and TOM ELLSWORTH,

                Counterclaim Defendants.

---

Counterclaim defendants Kuryakyn Holdings, Incorporated, Motorsport Aftermarket Group, Inc., Tom Rudd and Tom Ellsworth (collectively referred to as "Kuryakyn" unless otherwise noted) have filed a motion for summary judgment, seeking to dismiss counterclaimant David C. Abbe's remaining claims for breach of contract (count III), unjust enrichment (count IV), and for an accounting for Abbe's unpaid royalties (count V). (Dkt. #153.)[1] Kuryakyn contends that Abbe failed to substantiate his claims both as to liability and damages with admissible evidence. For the reasons that

---

[1] The court previously dismissed Abbe's RICO claim (3/4/13 Order (dkt. #141)) and Abbe withdrew his fraud claim (Pl.'s Notice (dkt. #145)).

follow, the court will grant in part and deny in part Kuryakyn's motion. Consistent with the court's preliminary ruling, Abbe's theory of liability will be limited to (1) the 56 renumbered products listed in Exhibit 57 and (2) the list of products marked with Abbe's patent numbers. Abbe may also pursue a claim based on his theory that Kuryakyn reduced his royalty payments by 10% across the board from 2005 to 2010. As for Kuryakyn's challenge to Abbe's damages proof, the court will deny the motion for summary judgment without prejudice to Kuryakyn renewing its arguments in a motion *in limine*.

Also before the court is defendant Kuryakyn's motion to compel discovery from Abbe concerning Glopar, a company for which he has held a majority interest. The court will deny Kuryakyn's motion based on Abbe's representation that he has produced everything he has. Given the significant passage of time since Kuryakyn served the discovery requests *and* Abbe produced the discovery at issue, any further relief is unavailable.[2]

---

[2] Abbe recently filed two motions -- a motion for discovery (dkt. #203) and a motion to make offer of proof (dkt. #204). The court will await ruling on these motions until Kuryakyn has had an opportunity to respond.

UNDISPUTED FACTS[3]

## I. The Agreement

On December 12, 1998, Kuryakyn Holdings, Incorporated and Abbe entered into an "amended agreement" (the "Agreement") relating to licensing and ownership of designs and intellectual property concerning motorcycle aftermarket lighting accessory products. In the Agreement, Kuryakyn is identified as "KHI" and Abbe as his company, "JIT," which stands for Just In Time. In pertinent part, the Agreement provides:

> 1. <u>DEVELOPMENT OF PRODUCTS</u>  For the payment described herein, JIT shall:
>
> a.)  Develop motorcycle accessory products as requested or directed by KHI.
>
> b.)  Assign to KHI all design, patent and trademark rights resulting from such development.
>
> . . .
>
> e.)  Confer negotiable rights of first refusal for KHI for Independently JIT-conceived and developed JIT Motorcycle Accessory designs on a "case by case" basis.

---

[3] Kuryakyn takes issue with several of Abbe's responses to Kuryakyn's proposed findings of facts, arguing that Abbe failed to cite to evidence supporting Abbe's proposed version of the facts as required by this court's summary judgment procedure. (*See, e.g.*, Kuryakyn's Am. Reply in Supp. of PFOFs (dkt. #197) ¶ 8.))  For the most part, Abbe simply disputes Kuryakyn's *characterization* of the evidence. For this, no citation to the record is necessary or even possible. Abbe did, however, fail to submit his own proposed findings of facts, while submitting an affidavit in opposition to Kuryakyn's motion containing new "facts." (Affidavit of David C. Abbe ("Abbe Aff.") (dkt. #161).)  This omission *is* in violation of the court's summary judgment procedure. (*See* Procedure to be Followed on Motions for Summary Judgment (dkt. #24) p.12 ("In addition to responding to the moving party's proposed facts, a responding party may propose its own findings of fact following the procedure in section I.B. and C. above.").)  Nonetheless, the court has considered Abbe's affidavit in deciding the present motion for summary judgment.

(Affidavit of Craig S. Krummen ("Krummen Aff."), Ex. A (dkt. #155-1).)  In return for Abbe's performance, Kuryakyn agreed to pay Abbe a 5% royalty "for the life of each product sold by KHI that uses JIT-developed designs." (*Id.* at § 2(a).)

## II. Evidence of Breach

Abbe asserts three counterclaims against Kuryakyn:  breach of contract, unjust enrichment, and accounting.  Material to Kuryakyn's motion for summary judgment, all three counterclaims turn on whether Kuryakyn sold products using Abbe's designs without compensating him under the terms of the Agreement.

In his counterclaim, Abbe alleges that Kuryakyn "renumbered" 56 products and sold these products without paying Abbe a royalty.  (Counterclaim (dkt. #27) ¶ 53.) Abbe attached the list of 56 products to his counterclaim as Exhibit 2.  (Counterclaim, Ex. 2 (dkt. #27-2).)  In responses to interrogatories, Abbe stated Kuryakyn's alleged new designs were "identical in form, function and appearance" to those designed by Abbe and that "[a]ll of the 'new' Kuryakyn part numbers are obvious copies of the original JIT/Abbe designs." (Krummen Aff., Ex. 3 (dkt. #155-3) 11; *id.*, Ex. 7 (dkt. #155-7) 2-3.)

At his deposition, Abbe acknowledged that he did not perform any detailed analysis of Kuryakyn's new designs; rather, Abbe relied on pictures of "new" Kuryakyn products in determining that they used his designs.  (Tr. of Abbe Deposition, Vol. 1 (dkt. #164) 61:4-5 ("I have studied nothing from those Kuryakyn products, except pictures."); 222:13-25 (acknowledging that he has not looked at the catalogue for a particular product to know whether it uses a different design); *id.*, Vol. 2 (dkt. #165) 432:20-24

4

(stating that he did not perform any analysis to determine whether a particular product was redesigned); 469:4-10 (testifying that he focused on the description of the product rather than its form, function and appearance in determining that products used his design).) Kuryakyn contends that the pictures "are not meaningful because they depict only a fully assembled product." (Kuryakyn's PFOFs (dkt. #158) ¶ 21.) In response, Abbe asserts that his "opinion, as the original designer of the designs in question, is more than ample evidence that the accused products use his designs." (Abbe's Resp. to PFOFs (dkt. #162) ¶ 21.)

Co-counterclaim defendants Rudd and Ellsworth both submitted declaration that Kuryakyn phased out JIT-designed products beginning in 2005 and replaced them with new designs secured from third party sources. (Declaration of Tom Rudd (dkt. #21) ¶ 21; Declaration of Tom Ellsworth (dkt. #20) ¶ 9.) Moreover, Kuryakyn's expert witness Brad Palmer compared JIT-designed products with alleged new designs, noting differences between the products. Based on his review of the products, Palmer found no basis to support Abbe's allegation that JIT-designed products and the new designs are "identical." (Expert Report of Brad Palmer (dkt. #157) 2.)

### III.  Alleged Damages

In response to an interrogatory, Abbe submitted a one-page spreadsheet claiming damages in the total amount of $2,869,251, with $1,024,701 for past damages and $1,844,550 for future damages. (Krummen Aff., Ex. 10 (dkt. #155-10).) In response to Kuryakyn's motion for summary judgment, Abbe also submitted a report of D. Heinz,

describing damages in the total amount of $2,876,899.[4]  During his deposition, Abbe repeatedly testified that he had "no idea" how he came up with various sales figures underlying his past damages claim in the spreadsheet described above. (Tr. of Abbe Dep., Vol. 2 (dkt. #165) 451:6-452:1).)  Specifically, Abbe could not explain the $6 million estimated sales figure for the years 2006-2013 underlying his past damages claim. (*Id.*, 444:1-8; 451:6-453:20.)  Similarly, Abbe testified at his deposition that his future sales figures were "estimates," but could not explain the basis for the estimates.  (*Id.*, 458:22-459:15.)

OPINION

I. Motion for Summary Judgment on Abbe's Counterclaims

   A. Liability

Abbe's remaining counterclaims all rest on his theory that he was denied royalty payments on products which use his designs.[5]  Specifically, Abbe contends that Kuryakyn renumbered its products in order to avoid paying Abbe royalties due under the Agreement.  After Kuryakyn's motion was filed but before it came under advisement, the court presided over two days of videotaped testimony of Abbe to be used at trial pursuant to Fed. R. Civ. P. 27(c).  During Abbe's testimony, the court allowed Abbe to

---

[4] The court has already addressed Kuryakyn's challenge to the timeliness of Heinz's report.  (Dkt. #181.)

[5] Abbe also argues that Kuryakyn cut his royalty payment by 10% across the board from 2005 through 2010.  Kuryakyn's motion does not address this particular theory of liability.

supplement his opposition to the present motion and also provided a preliminary ruling on Kuryakyn's motion.

Abbe attached as Exhibit 2 to his counterclaim a list of 56 products, which he alleged were renumbered but still use Abbe designs. (Counterclaim (dkt. #27) ¶ 90; *id.*, Ex. 2 (dkt. #27-2).) In response to defendant's motion for summary judgment, Abbe also submitted a list of 149 current Kuryakyn part numbers which he contends are "substantially identical in name, appearance, and /or function to a product which I originally designed." (Abbe Aff. (dkt. #161) ¶ 6; *id.*, Ex. 1 (dkt. #161-1). Similarly, during his trial testimony, Abbe offered Exhibit 58, a list of 136 products, for which he reviewed pictures in Kuryakyn catalogues to determine that the products used his designs. (7/10/13 Abbe Trial Testimony Tr. (dkt. #187) 61-62.)

Abbe argues he is justified in pursing damages for products sold on these additional, two lists by pointing out that only count II (misrepresentation) expressly references the 56 re-numbered products, and that his claims for breach of contract (count III), unjust enrichment (count IV) and an accounting (count V) are "in no way limited to the allegation that the subject products were 'merely' renumbered." (Abbe's Resp. to Kuryakyn's PFOFs (dkt. #162) ¶ 11.) Abbe has a point as far as it goes, but *even if* his breach of contract and related claims could have encompassed other products than those "56 re-numbered products," Abbe still, at this stage in the proceeding, must come forth with admissible evidence to support his claims for breach of contract, unjust enrichment and for an accounting with regard to these other products. *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 606, 612-13 (7th Cir. 2008) ("As we have often observed,

summary judgment is the 'put up or shut up' moment in the life of a case."). For the reasons provided during Abbe's trial testimony and in this court's opinion and order of August 16, 2013, denying Abbe's motion to reconsider the court's decision to exclude Exhibit 58, the two more comprehensive lists -- both the 149 product list attached to his declaration in opposition to summary judgment and the slightly modified 136 product list offered during his preserved trial testimony -- are conclusory and provide an insufficient basis to oppose Kuryakyn's motion for summary judgment. (7/10/13 Abbe Trial Testimony Tr. (dkt. #187) 74-76; 8/16/13 Op. & Order (dkt. #196) 2.)

In contrast, the court finds that so-called "Exhibit 57," which categorizes the 56 products by Abbe design parts, *is* sufficient to raise a genuine issue of material fact under Counts II-V as to whether Kuryakyn simply renumbered products while still using Abbe's designs, thereby avoiding payment of royalty fees due under the Agreement. (Affidavit of Constance K. White, Ex. 6 (dkt. #190-6); *see also* 7/10/13 Abbe Trial Testimony Tr. (dkt. #187) 55-60.) Similarly, products labeled as covered by patents on which Abbe is a named inventor give rise to an inference that those products use Abbe's designs. Whether that will be sufficient evidence to prove Kuryakyn breached the contract by failing to pay Abbe royalties on the sale of those products remains a question for trial.[6]

Accordingly, Abbe will be allowed to pursue his claims with respect to the following products at trial: (1) 56 re-numbered products, listed in Exhibit 57; and (2) products with patent numbers for which he was the named inventor. Of course, he may

---

[6] Any effort by Kuryakyn to defend here on the basis that the products no longer uses Abbe's patent, of course, raises other potential liability and estoppel issues that are not the subject of this decision, but may be addressed by the parties in their motions in limine.

also pursue his claim to recover an alleged across-the-board 10% reduction in fees due him under the Agreement.

### B. Damages

In its reply brief, which was filed after the court's preliminary ruling, Kuryakyn shifts its focus to Abbe's evidence in support of his claim for damages and relies on Abbe's preserved trial testimony to identify certain weaknesses in his analysis. Specifically, Kuryakyn challenges whether Abbe has laid the proper foundation for his damages exhibits, specifically challenging Abbe's foundation concerning (1) the product mix for Tables B-E of Heinz's report (which are the same at Exs. 61-64); and (2) future sales projections as detailed in Table E (which is also Ex. 63). Kuryakyn also asserts several other challenges to Abbe's damages analysis, including (1) failing to link damages analysis to specific product numbers; (2) premising future damages on patents he does not own and for which he has not asserted a claim of patent infringement; and (3) calculating future sales through 2022 on the unsupported assumption that Kuryakyn will be selling his designs through that year.

As far as Abbe's explanation (or lack thereof) for the product mix underlying the analysis in certain damages exhibits and Abbe's explanation for future sales productions as detailed in Exhibit 63, Kuryakyn's criticisms are well-founded. Since Abbe's testimony, however, the court has granted a motion to compel production of sales data which may aid in Abbe's damages analysis. Further, Abbe's expert may have refined her analysis in a supplemental report. The court will, therefore, deny counterclaim

9

defendants' motion for summary judgment at this time, but Kuryakyn may renew its challenge in response to Abbe's recently-filed motion to make offer of proof (dkt. #204) or in its own affirmative motion *in limine* before trial. Abbe is also on notice that the court will deny monetary damages entirely -- or certain categories of damages -- as a matter of law if he fails to offer admissible testimony or lay a proper foundation for the exhibits crucial to proving damages at trial.

**II. Motion to Compel**

Recently Kuryakyn moved to compel discovery related to Glopar, a company previously owned or controlled by Abbe.[7] The discovery requests at issue were served in *2010*. Abbe timely responded, answering interrogatories and producing 30,000 pages of documents and computer files. Now, three years later, Kuryakyn contends that the discovery was incomplete and Abbe failed to direct Kuryakyn to the relevant documents as required by Fed. R. Civ. P. 33(d)(1).[8] In response, Abbe contends that he produced all requested documents, and is not in a position today to identify specific documents in his production. This is because, or so Abbe avers, Kuryakyn returned the documents to him in a "jumble" and the computer files are either no longer in his possession or are now unreadable. (10/2/13 Abbe Decl. (dkt. #202) ¶ 8.)

---

[7] Abbe stated in interrogatory responses that he was the Chairman, President and owner of 55% of the shares of Glopar, Inc., and is a member and 55% owner of Glopar, LLC. (Kuryakyn's Br. in Supp. of Mot. to Compel (dkt. #199) 6; *see also* 10/2/13 Abbe Decl. (dkt. #202) ¶ 3.)

[8] In fairness, this case was stayed due to Abbe's bankruptcy filing from January 27, 2011, to January 27, 2012.

The court need not resolve the parties' dispute as to whether Abbe has admitted dealings through Glopar with Harley Davidson, which would constitute a breach of the Agreement. Regardless of whether certain evidence constitutes an "admission," Glopar's sales data is relevant to Kuryakyn's breach of contract claim. Still, Abbe avers that he has produced everything he has. To the extent the relevant documents are now buried, Kuryakyn should have sought relief from this court in 2010 when Abbe likely would have been in a better position to locate the specific documents (or at least would have less of an excuse for being unable to do so).

Perhaps more to the point, Kuryakyn is concerned about Abbe's "refusal" to authenticate spreadsheets produced from his files, which purportedly contain Glopar sales figures. During his trial testimony, Abbe acknowledged that the documents at issue were produced from his files, but testified that he had "no basis to testify about this document," and that it might have been produced by a bookkeeper. (7/9/13 Abbe Trial Testimony Tr. (dkt. #186) 110-113.) Abbe will be required to live with his testimony at trial and, absent evidence to the contrary, this evidence admittedly produced from Abbe's files *may* be the best available evidence to demonstrate Glopar's sales generally or, more specifically, to a Kuryakyn competitor. Even if not admissible as a self-authenticating document, it may be something relied upon by an expert familiar with the subject matter and adopting it as the most reliable, comprehensive figures available.

ORDER

IT IS ORDERED that:

1) Counterclaim defendants Kuryakyn Holdings, Incorporated, Motorsport Aftermarket Group, Inc., Tom Rudd and Tom Ellsworth's motion for summary judgment (dkt. #153) is GRANTED IN PART AND DENIED IN PART. Counterclaimant Abbe's theories of liability are limited to (1) the 56 re-numbered products listed in Exhibit 57; (2) products with patent numbers for which he was the named inventor; and (3) the across-the-board 10% reduction. In all other respects, the motion is DENIED; and

2) Plaintiff Kuryakyn Holdings, Incorporated's motion to compel (dkt. #198) is DENIED.

Entered this 11th day of October, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge